Filed 4/22/2019 9:19 AM
Karen Bunn
District Clerk
Upshur County, Texas
Reviewed By: James Thomas

CAUSE NO. ____247-19____

| | | |
|---|---|---|
| **BRANDY FERRER** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | 115th |
| **v.** | § | _____**JUDICIAL DISTRICT** |
| | § | |
| **NATIONAL GENERAL** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| *Defendant.* | § | **UPSHUR COUNTY, TEXAS** |

---

## PLAINTIFF'S ORIGINAL PETITION AND PETITION FOR DECLARATORY JUDGMENT WITH INTERROGATORIES, REQUESTS FOR PRODUCTION, REQUESTS FOR ADMISSION AND REQUESTS FOR DISCLOSURE ATTACHED

---

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Brandy Ferrer, complaining of National General Insurance Company and files this her *Original Petition and Petition for Declaratory Judgment with Interrogatories, Requests for Production, Requests for Admission and Requests For Disclosure Attached*, and would respectfully show the Court as follows:

### I.

### RULE 47 STATEMENT AND DISCOVERY PLAN

Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief over $100,000.00 but not more than $200,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees, as detailed below. Therefore, Discovery shall be conducted under Level 2, Rule 190.3.

Page 1 of 49

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
THE STATE OF TEXAS
COUNTY OF UPSHUR
The above and forgoing is a full, true and correct photographic
copy of the original on file and on record in my office.
Containing _____ pages,
Attest 5-31-19 AD
Karen Bunn, District Clerk
Upshur County, Texas
By: _____ Deputy

**EXHIBIT**
**C**

## II.

## PARTIES

Plaintiff Brandy Ferrer is a resident of Diana, Upshur County, Texas. Plaintiff's identifying information is: Texas Driver's License ***-**-577.

Defendant National General Insurance Company "National General" is qualified to do business, and is doing business, in the State of Texas. National General may be served with process upon its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620; Austin, Texas 78701.

## III.

## JURISDICTION AND VENUE

Jurisdiction is proper in that the amount in controversy greatly exceeds the minimum jurisdictional requirements of this Court. The Court has personal jurisdiction over Defendant National General because National General is a Texas corporation doing business in the State of Texas.

Pursuant to Section 15.001 et seq. of the Texas Civil Practice and Remedies Code, venue is proper in Upshur County in that is the county wherein the accident in question occurred.



## IV.

### **FACTUAL BACKGROUND**

On or about August 21, 2017 Plaintiff Brandy Ferrer was traveling North on Highway 271, Gilmer, Upshur County, Texas.

Underinsured driver, Geneva Murphy, was exiting a private drive onto Highway 271, Gilmer, Upshur County, Texas. Geneva Murphy failed to yield the right of way, and entered the highway in front of the Plaintiff causing Plaintiff to collide with the Geneva Murphy's vehicle which resulted in serious bodily injury to Plaintiff.

Plaintiff would further show that at the time of such automobile collision, she was covered by a policy of insurance issued by Defendant National General in which she carried underinsured motorist coverage.

On or about September 8, 2017, Plaintiff notified Defendant National General of the automobile collision made the basis of her claim. All conditions precedent have been performed or have occurred.

Despite being notified of the underlying automobile collision, Defendant National General has refused and continues to refuse to pay the benefits it is obligated to pay pursuant to the underinsured provisions of its policy issued to Plaintiff.

### V.

### **CLAIM FOR BENEFITS**

At all relevant times, Plaintiff was covered under an automobile insurance policy with Defendant National General, Policy Number 2005423728 which insured Plaintiff in



the event they were damaged or injured by the negligence of an uninsured or underinsured motorist.

Plaintiff has complied with all the terms and conditions of the policy prior to the bringing of this action. This lawsuit is maintained against Defendant National General under the terms of this policy for all damages recoverable thereunder, and Plaintiff would show that the time of trial of this matter, they will offer into evidence a copy of said policy, unless the original of same is produced or stipulated by the Defendant National General.

## VI.

## **DECLARATORY JUDGMENT**

Based on the foregoing facts, and pursuant to the policy of insurance in force and effect between Plaintiff and Defendant National General at the time of the accident, Plaintiff seek a declaratory judgment pursuant to Tex. Civ. Prac. & Rem. Code Ch. 37 construing the contract of insurance and declaring Plaintiff's rights and obligations under the contract.

Specifically, Plaintiff seeks a finding that Geneva Murphy is an under-insured motorist, that Plaintiff is entitled to recover damages resulting from the motor vehicle collision the subject of this suit, that Plaintiff's damages fall within the coverage afforded Plaintiff under the policy with Defendant National General, and that Plaintiff is entitled to recover and does recover from said Defendant the full amount of damages, attorneys' fees, interest, and court costs from National General pursuant to the contract of insurance and Ch. 37 of the Tex. Civ. Prac. & Rem. Code.



# VII.

## <u>VIOLATIONS OF THE TEXAS INSURANCE CODE</u>

Plaintiff presented their claims for benefits under their contract of insurance with National General.  Defendant breached the duties prescribed by the Texas Insurance Code, including:

    A.    misrepresenting a material fact or policy provision relating to the coverage at issue;

    B.    failing to timely accept or reject Plaintiff's claims;

    C.    failing to attempt, in good faith, to effectuate prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

    D.    failing to promptly provide a reasonable explanation of the basis on the policy, in relation to the facts of applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

    E.    failing within a reasonable time to affirm or deny coverage;

    F.    refusing to pay a claim without conducting a reasonable investigation;

    G.    misrepresenting material facts regarding the policy;

    H.    knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue;

    I.    failing to acknowledge with reasonable promptness pertinent communications relating to claim arising under the insurer's policy; and

    J.    failing to adapt and implement reasonable standards from the prompt investigation of claims arising under the insurer's policies.



These and other violations of §542.003 (formerly Article 21.21) and §542.055 through §542.058 (formerly Article 21.55) of the Texas Insurance Code entitle Plaintiff to recover, in addition to the damages alleged herein, reasonable attorney's fees and 18% of the total damage amount, pursuant to §542.060, in addition to the damages claimed above.

## VIII.

## BAD FAITH

Defendant owes Plaintiff a common-law duty of good faith and fair dealing with respect to the handling of Plaintiff's insurance claims made the basis of this lawsuit and Defendant investigation of those claims. Defendant breached this duty of good faith and fair dealing and acted in bad faith when it, in a concerted course of action and omission, refused to pay insurance proceeds to Plaintiff pursuant to the insurance policy made the basis of this lawsuit, even after having been provided with all relevant and requested information.

Said breach was a proximate cause of damages to Plaintiff as more specifically set forth herein below. Plaintiff asserts that there was no reasonable basis for delaying or failing to investigate Plaintiff's claims for damages, and Defendant National General knew or should have known that there was no such reasonable basis to delay and fail to pay such claims.

Despite the fact that all conditions precedent to Plaintiff's recovery, including compliance with the terms and conditions of the subject policy, have been performed or



have occurred, National General has failed and refused to pay Plaintiff the insurance proceeds owed in accordance with their contractual obligations, agreements, and representations.

In fact, after such refusals to pay and investigate, Plaintiff was forced to file suit to seek the policy benefits to which they are entitled. Plaintiff sent repeated written notices of loss and made specific written demands for payment, which were refused. This failure to pay amounts owed under the policy of insurance was wrong, improper, and made knowingly.

Defendant National General knew that substantial damages had been caused to Plaintiff following the automobile collision with an underinsured motorist, a covered loss under the policy, yet knowingly refused to pay or properly investigate most or all of such damage. Such conduct constitutes bad faith.

Plaintiff allege that Defendant failed to investigate their claims made the basis of this lawsuit in good faith, and instead knowingly and consciously set out from the beginning to compromise Plaintiff's claims and handle them in an adversarial manner.

Defendant National General's conduct has caused Plaintiff to suffer mental anguish and depression caused by Defendant's delays and wrongful denials of their claims, and National General and its employees either knew of this risk or should have known given the fact that Defendant represents to the general public that they have vast expertise in properly handling insurance claims.



Plaintiff also assert that Defendant National General knowingly failed to institute proper training guidelines and procedures for investigating claims made the basis of this lawsuit and for training employees to properly handle claims. Plaintiff asserts that Defendant chose to pay as little as possible, to delay paying insurance claims, and to deny claims whenever possible in order to avoid paying legitimate insurance claims.

Plaintiff also asserts that Defendant intentionally ignored evidence submitted by its insured, and has instituted a system whereby claims are devalued and adjusters are encouraged to settle claims for as little as possible rather than for the legitimate values of the same.

## IX.

## VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES

## CONSUMER PROTECTION ACT

Defendant National General violated the Texas Deceptive Trade Practices Consumer Protection Act ("DTPA") with respect to the handling of Plaintiff's claims made the basis of this lawsuit. Plaintiff purchased goods or services from National General in the form of the Underinsured insurance policy.

Plaintiff was consumers in the transaction and relied on National General in purchasing the goods and services and the representations made by National General in the form of said insurance policy that National General would pay for losses thereby insured against and would adhere to the terms contained therein.



In failing to conduct a good faith investigation of Plaintiff's insurance claims, and in failing to pay Plaintiff the amounts owed under the policy of insurance for the covered losses sustained, Defendant violated the following provisions of the DTPA:

A.      Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which he does not have in violation of §17.46(b)(5);

B.      Advertising goods or services with intent not to sell them as advertised in violation of §17.46(b)(9);

C.      Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law in violation of §17.46(b)(12); and

D.      Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed in violation §17.46(b)(23).

Defendant National General, its employees and agents also engaged in "unconscionable action or course of action" by the acts and practices described above, which took advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree in violation of §17.45(5), and made actionable pursuant to §17.50(a)(3).

Specifically, Defendant National General failed to perform a reasonable investigation of Plaintiff's claims. In addition, Defendant National General intentionally misrepresented to Plaintiff that her claims had been fully and properly investigated. As alleged above, Plaintiff also asserts that, upon information and belief, Defendant



undertakes merely to "investigate" what amount is the lowest acceptable offer to its insured instead of ascertaining the actual or good faith estimated value thereof. Plaintiff's claims are additionally actionable herein due to Defendant's violations of the Texas Insurance Code, as described below.

As a result of Defendant's unconscionable course of action, Plaintiff has suffered actual/economic damages. Plaintiff seeks to recover for their mental anguish proximately caused by Defendant's unconscionable course of conduct. Plaintiff also seeks herein to recover attorney fees incurred during the prosecution of this case, including any appeals.

Because Defendant intentionally and/or knowingly committed the acts, omissions, and misrepresentations complained of, Plaintiff seeks exemplary damages and/or statutory damages allowed by law.

## X.

## CONDITIONS PRECEDENT

All of the conditions precedent to bringing this suit under the policy and to Defendant National General's liability to Plaintiff under the policy for the claims alleged have been performed or have occurred.

Plaintiff has complied with all the terms and conditions of the policy for providing notice of their claims and proof of loss concerning their claims to Defendant National General; nevertheless, such claims have not been paid. Such denials and refusals to pay waive any further compliance with said policy by Plaintiff and leave Plaintiff free to sue for those benefits to which they are entitled but were denied.



In the alternative, Plaintiff allege that as to any such terms, conditions, notices, or requirements, the Defendant National General waived them and are estopped from asserting them, and/or Plaintiff had substantially complied with them.

Plaintiff makes the same allegations of waiver or estoppel to every defense, condition, or exclusion pleaded by Defendant National General, and as to each claim for breach of contract or statutory violation by Defendant National General.

## XI.

### INJURIES

Plaintiff Brandy Ferrer sustained serious bodily injuries as a direct and proximate result of the Defendant's negligence.

## XII.

### DAMAGES FOR BRANDY FERRER

As a direct and proximate result of the negligence of Defendant as alleged herein, Plaintiff Brandy Ferrer suffered the following damages:

    a.    Past medical expenses in the amount in excess of the jurisdictional limits of the Court;

    b.    Future medical expenses in excess of the minimum jurisdictional limits of the Court;

    c.    Past and future physical disability in excess of the minimum jurisdictional limits of the Court;

    d.    Past and future pain and suffering and mental anguish in excess of the minimum jurisdictional limits of the Court; and

    e.    Lost earning capacity.



## XIII.

## ATTORNEYS FEES

As a result of Defendant National General's actions complained of in this Petition, Plaintiff was required to engage the services of the law firm of **GRANT & FLANERY, P.C.** Plaintiff therefore seeks reimbursement of reasonable attorney's fees, inasmuch as Plaintiff has been required to employ the undersigned attorney to file and prosecute this suit. Pursuant to the Texas Civil Practice and Remedies Code and Texas Insurance Code, Plaintiff hereby makes this written presentment of their claim for attorney fees.

## XIV.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant National General be cited to appear and answer herein, and that upon final hearing hereof, Plaintiff recovers the following:

A. Judgment against Defendant for actual damages in an amount in excess of the minimum jurisdictional limits of the Court;

B. Prejudgment interest, at the legal rate on damages that have been accrued by the time of judgment;

C. Interest after judgment at the legal rate per annum until paid;

D. Cost of suit;

E. Attorney's fees in a reasonable amount, together with conditional awards in the event of an appeal;



All statutory penalties as provided for by the Texas DTPA and the Texas Insurance

Code; and such other relief, general and special, legal and equitable, to which Plaintiff may

show they are justly entitled.

Respectfully Submitted,

_/s/ Matthew B. Flanery_
**MATTHEW B. FLANERY** _Lead Attorney_
State Bar No. 24012632
**DARREN GRANT**
State Bar No. 24012723
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
(903) 596-8080  (Telephone)
(903) 596-8086  (Facsimile)
Matt@GFTexas.com

**ATTORNEYS FOR PLAINTIFF**



CAUSE NO. _247-19_____

| | | |
|---|---|---|
| **BRANDY FERRER** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | 115th |
| **v.** | § | _____JUDICIAL DISTRICT |
| | § | |
| **NATIONAL GENERAL** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| *Defendant.* | § | **UPSHUR COUNTY, TEXAS** |

---

## PLAINTIFF'S REQUEST FOR DISCLOSURE TO DEFENDANT NATIONAL GENERAL INSURANCE COMPANY

---

**TO:** Defendant NATIONAL GENERAL, through service of process.

Pursuant to Rule 194, you are requested to disclose, within 50 days of service of this request, the information or material described in Texas Rules of Civil Procedure, Rule 194.2 (a) through (l).

Pursuant to Rule 190.2(b)(6), you are also hereby requested to disclose; **(1) all documents, (2) electronic information, and (3) tangible items that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses.**

Please note that under Rule 190.2(b)(6), A request for disclosure made pursuant to this paragraph is not considered a request for production.



Respectfully Submitted,


___/s/ Matthew B. Flanery___
**MATTHEW B. FLANERY**
State Bar No. 24012632
**DARREN GRANT** *Lead Attorney*
State Bar No. 24012723
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
Matt@GFTexas.com
(903) 596-8080  (Telephone)
(903) 596-8086  (Facsimile)

**ATTORNEYS FOR THE PLAINTIFF**



CAUSE NO. __247-19__

| | | |
|---|---|---|
| **BRANDY FERRER** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | 115th |
| **v.** | § | _____JUDICIAL DISTRICT |
| | § | |
| **NATIONAL GENERAL** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| *Defendant.* | § | **UPSHUR COUNTY, TEXAS** |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT NATIONAL GENERAL

**TO:** Defendant, National General through service of process.

Please take notice that pursuant to Rules 192 and 197 of the Texas Rules of Civil Procedure, Plaintiff serves the attached interrogatories to be propounded to Defendant National General.

You are hereby instructed to answer the following interrogatories separately, fully, in writing, and under oath if required by Rule 197.2(d) of the Texas Rules of Civil Procedure. The answers shall be served upon the undersigned counsel within 50 days after the service of these interrogatories. Your failure to make timely answers or objections may subject you to sanctions as provided in Rule 215 of the Texas Rules of Civil Procedure.

Furthermore, demand is made for the supplementation of your answers to these interrogatories as required by Rule 193.5 of the Texas Rules of Civil Procedure.



Respectfully Submitted,


_____*/s/ Matthew B. Flanery*_____
**MATTHEW B. FLANERY** Lead Attorney
State Bar No. 24012632
**DARREN GRANT**
State Bar No. 24012723
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
Matt@GFTexas.com
(903) 596-8080  (Telephone)
(903) 596-8086  (Facsimile)

**ATTORNEYS FOR THE PLAINTIFF**



## DEFINITIONS AND INSTRUCTIONS

      1.    As used herein, the terms "you" and "your" shall refer to National General, National General' attorneys, agents, and all other natural persons or business or legal entities acting or purporting to act for or on behalf of National General, whether authorized to do so or not.

      2.    As used herein, the term "documents" shall mean all writings of every kind, source and authorship, both originals and all nonidentical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills, statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts or drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate bylaws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries; drafts; files; guaranty agreements; instructions; invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements; interviews; stock transfer ledgers; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.



3.     In accordance with Tex. R. Civ. P. Rule 192.7, a document is deemed to be in your possession, custody or control if you either have physical possession of the item or have a right to possession of the item that is equal or superior to the person who has physical control of the item.

4.     "Person":   The term "person" shall include individuals, associations, partnerships, corporations, and any other type of entity or institution whether formed for business purposes or any other purposes.

5.     "Identify" or "Identification":
(a)     When used in reference to a person, "identify" or "identification" means to state his or her full name, present or last known residence address, present or last known business address and telephone number.

(b)     When used in reference to a public or private corporation, governmental entity, partnership or association, "identify" or "identification" means to state its full name, present or last known business address or operating address, the name of its Chief Executive Officer and telephone number.

(c)     When used in reference to a document, "identify" or "identification" shall include statement of the following:

(i) the title, heading, or caption, if any, of such document;

(ii) the identifying number(s), letter(s), or combination thereof, if any; and the significance or meaning of such number(s), letter(s), or combination thereof, if necessary to an understanding of the document and evaluation of any claim of protection from discovery;

(iii) the date appearing on such document; if no date appears thereon, the answer shall so state and shall give the date or approximate date on which such document was prepared;

(iv) the number of pages and the general nature or description of such document (i.e., whether it is a letter, memorandum, minutes of a meeting, etc.), with sufficient particularity so as to enable such document to be precisely identified;

(v) the name and capacity of the person who signed such document; if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;



(vi) the name and capacity of the person to whom such document was addressed and the name and capacity of such person, other than such addressee, to whom such document, or a copy thereof, was sent; and

(vii) the physical location of the document and the name of its custodian or custodians.

6. "Settlement": as used herein, means:

(a) an oral or written, disclosed or undisclosed agreement, bargain, contract, settlement, partial settlement, limited settlement, arrangement, deal, understanding, loan arrangement, credit arrangement, contingent settlement, limitation on the amount of liability or judgment, or a promise by or between plaintiff and any defendant or between any defendant herein whereby plaintiff or defendant have in any way released, compromised, in whole or in part, directly or indirectly, or agreed to do so in the future, any of the matters in controversy in this lawsuit whether before, after or during trial or before or after any jury verdict is returned herein or a judgment is entered or rendered herein.

(b) any resolution of the differences between the plaintiff and defendant by loan to the plaintiff or any other device which is repayable in whole or in part out of any judgment the plaintiff may recover against defendant.

(c) The term "settlement" shall also include "Mary Carter Agreements" as that term is used under Texas Law.

7. Unless a specific date or dates is set forth in any specific question herein, you are directed that each question shall be answered for the period of time up to and including the present date.



## INTERROGATORIES

**INTERROGATORY 1:** Identify each person answering these interrogatories, supplying information, or assisting in any way with the preparation of the answers to these interrogatories and the responses to the requests for production.

**ANSWER:**

**INTERROGATORY 2:** Describe each separate file containing records, documents, or information relating to Plaintiff's claims or Plaintiff. Include in your description for each file: name, number, descriptive title, custodian, contents and location.

**ANSWER:**

**INTERROGATORY 3:** Identify by name, employer (if different from Defendant), business address, job title and telephone number of the individual who will be Defendant's in-court representative.

**ANSWER:**

**INTERROGATORY 4:** Identify by name, employer, business address, job title and telephone number and role of each of Defendant's employees, agents, representatives, adjusters, independent adjusters, independent adjusting firms, consultants and any entity or individual acting under any oral or written agreement, who performed any claims work, participated in the evaluation of Plaintiff's claim, and/or claims services of any type or nature, with respect to the insurance claims involved in this litigation.

**ANSWER:**

**INTERROGATORY 5:** Identify all of your employees who evaluated Plaintiff's claim, authorized settlement offers to be made to, and/or made decisions regarding any adjuster's authority to settle Plaintiff's claim relating to uninsured/underinsured coverage provided to Plaintiff.

**ANSWER:**



**INTERROGATORY 6:** Identify all criminal convictions of Plaintiff, any parties to the suit, and/or any witnesses which you intend to use at trial for impeachment purposes pursuant to Rule 609 TX. R. Civ. Evid.

**ANSWER:**

**INTERROGATORY 7:** In accordance with TRCP 194.2 (d) and 192.3 (a), if you are claiming a credit against judgment, please specify the dollar amount claimed in each category of damages claimed as well as specifically how you arrived at and calculated the dollar amount claimed for each category.

**ANSWER:**

**INTERROGATORY 8:** In accordance with TRCP 194.2(d) and 192.3(a), if you contest any of the economic damages and/or medical bills claimed by the Plaintiff under TRCP 192.4(d), please state, FOR EACH CATEGORY OF DAMAGES or MEDICAL PROVIDER, the category of damages or medical provider being contested, the amount for each category or medical provider being contested, the reason the amount for each category or medical provider is being contested, what you contend the correct dollar amount of damages for each category or medical provider should be, and the method of calculating what you contend to be the correct dollar amount of damages.

**ANSWER:**

**INTERROGATORY 9:** If you have information regarding any other claims for personal injury of any type which were made or potentially made by the Plaintiff, Defendant or any other party to this lawsuit, please state all information you have regarding any such claim including the date of claim, the type of claim, the name of the person making the claim, the other parties involved in the claim, the injuries claimed in such incident, any medical providers involved in any treating any injuries made in the claim, any insurance company and claim number of the claim as well as the disposition of such claim.

**ANSWER:**



**INTERROGATORY 10:** State each and every factor which you now contend or will contend at trial caused or contributed to the Plaintiff's damages including, but not limited to, pre-existing physical or medical conditions of the Plaintiff. Additionally, please state generally what facts lead you to believe that such act or omission caused or contributed to the incident.

**ANSWER:**

**INTERROGATORY 11:** State the procedures relied upon and the criteria utilized by Defendant in its investigation of Plaintiff's claim to evaluate and place a dollar value on her claim.

**ANSWER:**

**INTERROGATORY 12:** Please state the amount of all settlement offers made by you in an effort to resolve Plaintiff's claim prior to suit being filed and the method you used and how you calculated this amount and/or Plaintiff's damages. Additionally, please identify the persons involved in arriving at such figure.

**ANSWER:**

**INTERROGATORY 13:** Please state if you are denying coverage, asserting an exclusion or breach of the contract by Plaintiff, or defending this case conditionally or on reservation of rights. If yes, please explain in detail.

**ANSWER:**

**INTERROGATORY 14:** Please list, describe and identify all documents that support any and all:

    a. condition(s) precedent to bringing this lawsuit against you that Plaintiff have not met, and

    b. any terms and conditions of the insurance agreement that Plaintiff did not comply with, and

    c. any exclusions you assert are applicable to the demand for Uninsured/Underinsured Motorist Benefits.

**ANSWER:**

**INTERROGATORY 15:** Identify any statements that have been taken by Defendant or taken on Defendant's behalf, relating to this litigation or the claim which forms the basis of this lawsuit, including statements from any party or witness, and do the following:

    a. Identify the person who gave or made the statement.
    b. Specify the date when the statement was taken.
    c. Identify the person who took the statement.
    d. State whether the statement was recorded, regardless of medium (e.g., paper or electronic), and if so, identify the material.
    e. State whether defendant will, without a formal request to produce, attach a copy of all statements described in the answer to this interrogatory.

**ANSWER:**

**INTERROGATORY 16:** If anyone performed an investigation of this case on your behalf, please identify the following:

    a. The date upon which each such investigation was begun.
    b. The name, address and telephone number of all persons conducting the investigation.
    c. The names, addresses and telephone numbers of all persons the investigator has contacted and indicates whether a written statement was obtained.
    d. Identify all reports, statements, photographs and any other documents obtained and/or generated pursuant to said investigation.

**ANSWER:**



## VERIFICATION

STATE OF TEXAS                                  §

COUNTY OF _____                         §

     BEFORE ME, the undersigned authority personally appeared a representative of

NATIONAL GENERAL INSURANCE COMPANY, who stated, upon oath, that the

statements made in the foregoing instrument are within his/her personal knowledge and are

true and correct.

_____

Representative

**SUBSCRIBED AND SWORN TO BEFORE ME** on this the _____ day of

_____, 20_____.

_____

Notary Public, State of Texas



CAUSE NO. 247-19 _____

| | | |
|---|---|---|
| **BRANDY FERRER** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | 115th |
| **v.** | § | _____JUDICIAL DISTRICT |
| | § | |
| **NATIONAL GENERAL** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| *Defendant.* | § | **UPSHUR COUNTY, TEXAS** |

## PLAINTIFF'S REQUEST FOR PRODUCTION TO DEFENDANT NATIONAL GENERAL

**TO:** Defendant National General through service of process.

Please take notice that request is hereby made by Plaintiff, pursuant to Rule 196 of the Texas Rules of Civil Procedure, that Defendant National General, produce or permit the undersigned attorney, Matthew B. Flanery, Grant & Flanery, 216 W. Erwin, Suite 200, Tyler, Texas, to inspect and copy or reproduce the items hereinafter designated on Exhibit "A" attached hereto.

Within 50 days after service of these Requests for Production, you must serve a written response to the undersigned attorney at 216 W. Erwin St. Suite 200, Tyler, TX 75702, including the items requested or stating with respect to each request that an inspection and copying or reproduction will be permitted as requested.



In the event a request is objected to, please specifically state (a) the legal or factual basis for the objection, and (b) the extent to which you refuse to comply with the request. Pursuant to Rule 193.2(b) of the Texas Rules of Civil Procedure, a party must comply with as much of the request to which the party has made no objection unless it is unreasonable under the circumstances to do so before obtaining a ruling on the objection.

Respectfully Submitted,

*/s/ Matthew B. Flanery*
**MATTHEW B. FLANERY** Lead Attorney
State Bar No. 24012632
**DARREN GRANT**
State Bar No. 24012723
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
Matt@GFTexas.com
(903) 596-8080  (Telephone)
(903) 596-8086  (Facsimile)

**ATTORNEYS FOR THE PLAINTIFF**



## DEFINITIONS AND INSTRUCTIONS

     1.    As used herein, the terms "you" and "your" shall mean National General, and all attorneys, agents, and other natural persons or business or legal entities acting or purporting to act for or on behalf of National General, whether authorized to do so or not.

     2.    As used herein, the term "documents" shall mean all writings of every kind, source and authorship, both originals and all nonidentical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills, statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts or drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate bylaws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries or drafts; files; guaranty agreements; instructions; invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements or interviews; stock transfer ledgers; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter.



3.    In accordance with Tex. R. Civ. P. Rule 192.7, a document is deemed to be in your possession, custody or control if you either have physical possession of the item or have a right to possession of the item that is equal or superior to the person who has physical control of the item.

4.    "Person" or "persons" means any natural persons, firms, partnerships, associations, joint ventures, corporations and any other form of business organization or arrangement, as well as governmental or quasi-governmental agencies. If other than a natural person, include all natural persons associated with such entity.

5.    Any and all data or information which is in electronic or magnetic form should be produced in a reasonable manner.

## USE OF DEFINITIONS

The use of any particular gender in the plural or singular number of the words defined under paragraph "1", "Definitions" is intended to include the appropriate gender or number as the text of any particular request for production of documents may require.

## TIME PERIOD

Unless specifically stated in a request for production of documents, all information herein requested is for the entire time period from date of incident, through the date of production of documents requested herein.



**EXHIBIT A**
**DOCUMENTS TO BE PRODUCED**

1.     Please produce a true and correct copy of the entire UIM insurance policy or policies and renewal policies issued by you for coverage to Plaintiff at any time from January 1, 2014 to the present.

**RESPONSE:**

2.     Please produce a true and correct copy of the entire UIM insurance policy in effect at the time of Plaintiff's automobile collision.

**RESPONSE:**

3.     Please produce a true and correct copy of each monthly and/or yearly premium paid by Plaintiff to National General for UIM coverage to Plaintiff at any time from January 1, 2014 to the present.

**RESPONSE:**

4.     Please produce a copy of each and every document received by Defendant National General from Plaintiff (or on his behalf) in regards to the UIM claim submitted by Plaintiff as a result of the collision up until the date of the filing of Plaintiff's Original Petition in this case.

**RESPONSE:**

5.     Please produce a copy of each and every document sent or forwarded by National General to Plaintiff in regards to the UIM claim submitted by Plaintiff as a result of the collision up until the date of the filing of Plaintiff's Original Petition in this case.

**RESPONSE:**

6.     Please produce all correspondence or documents sent by you to Auto Injury Solutions in regards to the UIM claim of Plaintiff as a result of the collision.

**RESPONSE:**

7.     Please produce all correspondence or documents received by you from any third-party as a result of the UIM claim of Plaintiff as a result of the collision.

**RESPONSE:**



8.     Produce a copy of the most recent résumé or CV for each individual at NATIONAL GENERAL INSURANCE COMPANY that was involved in the adjusting, audit or analysis of Plaintiff's claim for UIM benefits as a result of the collision.

**RESPONSE:**

9.     Produce a copy of the most recent résumé or CV for each individual employed by any third party who was involved in the adjusting, audit or analysis of Plaintiff's claim for UIM benefits as a result of the collision.

**RESPONSE:**

10.     Produce the last fifty reports prepared by any computer software program utilized or third-party reports dealing with an audit or review of medical bills submitted for payment under a National General UIM policy.  Plaintiff agrees to the whiting out and redacting of names and identifying information of the individual claimants so that no personal information is disclosed.

**RESPONSE:**

11.     Produce a copy of each invoice that any third party has presented to National General for their services in auditing the medical bills of Plaintiff.

**RESPONSE:**

12.     Produce a copy of each invoice that any third party has presented to National General for services in auditing claims for UIM benefits for each month and/or year from January 1, 2014 to present.

**RESPONSE:**

13.     Produce a true and correct copy of claims file in regards to the UIM claim of Plaintiff as a result of collision, including but not limited to correspondence, handwritten notes, e-mails, writings on the jacket of the file, telephone messages, medical records, audits, computer printouts, reports on average billing rates in the area, or billings.

**RESPONSE:**



14. Produce a true and correct copy of any and all contracts, employment contracts, retention agreements, or contracts for services between any third party and NATIONAL GENERAL INSURANCE COMPANY in regards to the review/audit of medical billings submitted under a National General UIM policy of insurance for January 1, 2014 to present.

**RESPONSE:**

15. Please produce a true and correct copy of any 1099(s) issued to any third party involved in the analysis or audit of medical expenses by defendant for the years 2014, 2015, 2016, and 2017.

**RESPONSE:**

16. Produce all documents forwarded by you to any outside consultant or agency in regards to any analysis of the National General UIM claims handling, making UIM claims handling more effective, making the UIM claims handling more profitable, and/or reducing payouts under the National General UIM program at any time from January 1, 2014 to the present.

**RESPONSE:**

17. Produce all documents received by you from any outside consultant or agency in regards to any analysis of the National General UIM claims handling, making UIM claims handling more effective, making the UIM claims handling more profitable, and/or reducing payouts under the National General UIM program at any time from January 1, 2014 to the present.

**RESPONSE:**

18. Produce any claims procedure manuals, claims handling manuals, claims procedure guidelines, claims procedure handbooks, or other instructional documents in place and used by National General in regards to the handling of UIM claims in Texas, and/or the proper and/or timely handling of UIM claims in Texas by National General and used any time from January 1, 2014 through the present.

**RESPONSE:**

19. Produce any computer software, regional analysis of medical expenses, average costs of medical expenses claims, medical texts, pricing indexes or other documents, computer databases, computer software, or other standards consulted regarding the:



a. reasonableness of the price of a medical procedure or billing; and

b. the necessity of a medical procedure or billing, used by National General and/or any third-party contractor in regards to the handling of the UIM claim of Plaintiff as a result of the collision, and the evaluation of the reasonableness and necessity of the medical bills forwarded by Plaintiff.

**RESPONSE:**

20. Produce any and audit tools (or the print-out of same) used to assist the National General adjuster and/or claims representative in evaluating the UIM claim of Plaintiff as a result of the collision.

**RESPONSE:**

21. Produce any and audit tools (or the print-out of same) used to assist any third party or representative in evaluating the UIM claim of Plaintiff as a result of the collision.

**RESPONSE:**

22. Any and all documents reflecting subrogation interests or hospital, doctor, attorney, governmental, or any other type of lien arising from the incidents made the basis of this lawsuit.

**RESPONSE:**

23. Copies of any and all of Plaintiff's medical records, documents, reports and billing in Defendant's possession.

**RESPONSE:**

24. Please produce all records (including medical records, bills and affidavits of records custodians) obtained via any deposition by written questions you have propounded upon any medical provider or employer of Plaintiff.

**RESPONSE:**

25. Please produce all records (including medical records, bills and affidavits of records custodians) obtained via any authorization provided by or signed by Plaintiff.

**RESPONSE:**



26.    Copies of any and all documents including, but not limited to, SWIB reports (or similar reports gathered by and for multiple insurance companies dealing with other claims or reports of injury by Plaintiff) reflecting other similar incidents, collisions or injuries involving Plaintiff in the possession of you, your attorneys, agents or representatives.  This is not a request for privileged attorney work product prepared by (versus acquired by) Defendant's attorneys (or the attorney's staff) specifically for this litigation unless Defendant intends to present same at trial or in any hearing in this lawsuit.

**RESPONSE:**

27.    Copies of all documents which Defendant or Defendant's attorneys may rely upon or attempt to present to the judge or jury of this case to show that Plaintiff's claimed injuries or damages herein were the result of a pre-existing, subsequently arising, or unrelated condition or injury.  This request is for the specific pages of any applicable records.

**RESPONSE:**

28.    Copies of all documents which Defendant or Defendant's attorneys may rely upon or attempt to present to the judge or jury of this case to show that any medical test or treatment that any Plaintiff received following the collision made the basis of this suit was unnecessary, or that any of the charges for medical services were unreasonable.  This request is for the specific pages of any applicable records.

**RESPONSE:**

29.    All documents evidencing claims of Plaintiff for personal injury that did not arise from the incident made the basis of this suit. This request is for specific pages of any applicable records.

**RESPONSE:**

30.    All recorded statements, written statements or depositions given by Plaintiff in any matter or lawsuit unrelated to the lawsuit made the basis of this suit that may be used to impeach Plaintiff or that Defendant may attempt to introduce or read to the judge or jury in this lawsuit.

**RESPONSE:**



31. All claims, reports or documents dealing with any claims for disability or worker's compensation claims filed by Plaintiff. This request is for specific pages of any applicable records.
**RESPONSE:**

32. All police reports dealing with any prior or subsequently arising automobile collisions involving Plaintiff.

**RESPONSE:**

33. All claim files, insurance records, recorded statements, UIM applications, photographs, lost wages documentation, repair records, or correspondence by or from Plaintiff or any attorney for Plaintiff regarding any claims for personal injury by Plaintiff outside of this lawsuit.

**RESPONSE:**

34. All repair records, property damage reports, appraisals, or photographs dealing with any property damage incurred by any vehicle in which Plaintiff was a driver or passenger in any automobile collision other than the collision made the basis of this suit.

**RESPONSE:**

35. All documents pertaining to the reputation, character, credibility, arrest, trial or conviction of Plaintiff.

**RESPONSE:**

36. All correspondence, memoranda, statements, tape recordings (or transcript thereof), wire reports, investigation reports, close-out reports, summaries or any other documents (including papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings and any other data compilations from which information can be obtained and translated, if necessary, into reasonably usable form), as well as any other tangible things which were prepared or received by you, your agents, servants, employees, or representatives (including, but not limited to insurance carriers, adjusting companies, or investigators) which reflect the following:

a. Whether Plaintiff actually received or did not receive an injury as claimed in Plaintiff's current pleadings on file herein;
b. The extent or duration of Plaintiff's claimed physical or mental incapacity/injuries, including any restrictions or lack of restrictions;



c. Plaintiff's physical or mental condition before or after the incident in this cause of action;

d. The earning capacity of Plaintiff before or after the incident in this cause of action;

e. Plaintiff's ability or inability to work before or after the date of the claimed injuries;

f. Any indemnity reserve relating to the claimed injuries and damages of Plaintiff; and

g. Any advance payments made to Plaintiff.

**RESPONSE:**

37.     Any documents which may be used to impeach or cross exam Plaintiff on "bad acts" or actions which would call into question Plaintiff's character or reputation including but not limited to instances where Plaintiff have been fired from any job, been dishonest or filing inaccurate documents.

**RESPONSE:**

38.     A copy of any and all documents you may introduce or attempt to present to the Judge or jury to show conduct on behalf of the Plaintiff that may affect his ability to be employed or obtain a job with an employer in the future.

**RESPONSE:**

39.     Please furnish a copy of each surveillance photograph, motion picture or video taken of Plaintiff.

**RESPONSE:**

40.     A copy of the C.V. or resume of any individual that photographed, filmed, videotaped or performed surveillance on the Plaintiff.

**RESPONSE:**

41.     Please produce any and all court records (including any affidavits or verifications of records custodians) which Defendant alleges demonstrate any alleged criminal conviction of any crime including but not limited to any alleged felony or crime of moral turpitude allegedly committed by the Plaintiff or any other person identified by any party as having knowledge of relevant facts.

**Pursuant to Rule 609** of the Texas Rules of Civil Evidence, please provide written notice of your intention to introduce into evidence any criminal conviction of any crime including but not limited to any felony or crime or moral turpitude of any Plaintiff, or witness identified by any party as having knowledge of relevant facts. Such notice should include



the name of the person, the offense of which convicted, the date of conviction and the court in which convicted and the disposition, if known (i.e. jail time, fine, probation, deferred adjudication, etc.)

**RESPONSE:**

42.    Please furnish all medical records, reports, bills, and other written documents from all hospitals and/or physicians which have examined and/or treated Plaintiff for any injuries which she may have received as a result of the incident made the basis of this suit or any prior or subsequent injury/condition.

**RESPONSE:**

43.    Any reports, memoranda, documents or materials of any type which specifically indicate a date or occurrence on which you rely for any contention that you had a good faith belief to reasonably anticipate that there was a substantial chance that litigation would ensue concerning Plaintiff's UIM claim for the collision.

**RESPONSE:**

44.    A copy of the entire claim and investigation file (including copies of the front and back covers) of the Defendant, Defendant's insurance company, Defendant's representatives, or agents, regarding the UIM claim of Plaintiff as a result of the collision made or acquired before the time Defendant had reasonable cause to believe that litigation would arise as a result of the incident made the basis of this suit, This would include all such files associated with the UIM claim of Plaintiff whether they be classified as special investigative unit files, or some other classification.

**RESPONSE:**

45.    A certified copy of the entire contract of insurance between National General and Plaintiff including all attachments, riders, endorsements, and any other items or documents made part of said contract prior to the collision or otherwise effective at the time of the collision.

**RESPONSE:**

46.    A copy of the UIM payout log/ledger reflecting all payments to date.

**RESPONSE:**



47.    A copy of every Explanation of Medical Bill Payment, Explanation of Benefits, or other document which indicates any claim or attempted claim for no-fault benefits which claim or attempted claim was paid in whole or in part, denied, refused, or applied to any deductible.

**RESPONSE:**

48.    A copy of Plaintiff's "Application for UIM Benefits" or equivalent, including all attending physicians' reports and all accompanying diagrams, statements, or correspondence.

**RESPONSE:**

49.    Every recorded statement pertaining in any manner to this action including the facts of the collision, coverage, entitlement to benefits, Plaintiff's medical or physical condition, or any other matter that may relate in any way to any issue in this action.

**RESPONSE:**

50.    Each and every document that might support or tend to support any affirmative defense asserted in response to Plaintiff's pleadings.

**RESPONSE:**

51.    Any and all documents or items which will be presented as evidence or as an exhibit at trial of this action.

**RESPONSE:**

52.    Please produce a copy of every document sent to Plaintiff by National General since concerning Plaintiff's UIM claim.

**RESPONSE:**

53.    Please produce a copy of every document received by National General since concerning Plaintiff's UIM claim.

**RESPONSE:**



CAUSE NO. 247-19 _____

| | | |
|---|---|---|
| **BRANDY FERRER** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | 115th |
| **v.** | § | _____ **JUDICIAL DISTRICT** |
| | § | |
| **NATIONAL GENERAL** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| *Defendant.* | § | **UPSHUR COUNTY, TEXAS** |

## PLAINTIFF'S REQUESTS FOR ADMISSIONS TO DEFENDANT NATIONAL GENERAL

TO:  Defendant, National General through service of process.

COMES NOW Plaintiff in the above styled and numbered cause, and pursuant to Rule 198 of the Texas Rules of Civil Procedure, makes the following Request for Admissions of Fact.

You are notified that Plaintiff demand that within 50 days after the service of these requests, Defendant National General specifically admit or deny the facts requested as set forth on Exhibit "A." A failure to specifically answer any request, or an evasive answer to any request, will be taken as an admission of truth of such request.



Respectfully Submitted,


**/s/ Matthew B. Flanery**
**MATTHEW B. FLANERY** *Lead Attorney*
State Bar No. 24012632
**DARREN GRANT**
State Bar No. 24012723
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
Matt@GFTexas.com
(903) 596-8080 (Telephone)
(903) 596-8086 (Facsimile)

**ATTORNEYS FOR THE PLAINTIFF**



## EXHIBIT A
## REQUESTS FOR ADMISSIONS

1.     At the time of the occurrence which forms the basis of this lawsuit, Plaintiff was insured under policy of insurance with Defendant Insurer which contained coverage for Uninsured/Underinsured Motorist coverage.

**ADMIT OR DENY:**

2.     At the time of the occurrence which forms the basis of this lawsuit, The Insurance Policy contained $100,000.00 per accident coverage for Uninsured/Underinsured Motorist benefits for bodily injury damages.

**ADMIT OR DENY:**

3.     Plaintiff obtained the consent of Defendant Insurer to settle their personal injury claims against Geneva Murphy.

**ADMIT OR DENY:**

4.     Admit that an underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit of liability either:

a. is not enough to pay the full amount the covered person is legally entitled to recover as damages; or
b. has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered person is legally entitled to recover as damages.

**ADMIT OR DENY:**

5.     Admit that under the terms of The Insurance Policy, an "Uninsured motor vehicle" means a land motor vehicle or trailer of any type,

a. to which no bodily injury liability bond or policy applies at the time of the accident.
b. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:
    1. you or any family member;
    2. a vehicle which you or any family member are occupying; or
    3. your covered auto
c. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:



          1. denies coverage; or
          2. is or becomes insolvent.
    d. Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit of liability either:
          1. is not enough to pay the full amount the covered person is legally entitled to recover as damages; or
          2. has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered person is legally entitled to recover as damages.

**ADMIT OR DENY:**

    6. At the time of the occurrence which forms the basis of this lawsuit, The Insurance Policy with Defendant Insurer contained coverage for Uninsured/Underinsured Motorist benefits which represents it will pay for damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

**ADMIT OR DENY:**

    7. At the time of the occurrence which forms the basis of this lawsuit, Plaintiff is the named insured under The Insurance Policy.

**ADMIT OR DENY:**

    8. At the time of the occurrence which forms the basis of this lawsuit, Plaintiff are covered under The Insurance Policy.

**ADMIT OR DENY:**

    9. Admit that the motor vehicle collision which forms the basis of this lawsuit constitutes an "accident" as defined by The Insurance Policy.

**ADMIT OR DENY:**

    10. Admit that Plaintiff promptly notified Defendant Insurer of the accident which forms the basis of this lawsuit.

**ADMIT OR DENY:**



11. Admit that Plaintiff complied with all of their duties to Defendant Insurer under The Insurance Policy which relate to the claims made the basis of this lawsuit.

**ADMIT OR DENY:**

12. Admit that Defendant Insurer is not contending that Plaintiff did not complied with any of their duties owed to Defendant Insurer under The Insurance Policy which relate to the claims made the basis of this lawsuit.

**ADMIT OR DENY:**

13. At the time of the occurrence which forms the basis of this lawsuit, Defendant Insurer believes that Plaintiff were occupying their "covered auto" as that term is defined by The Insurance Policy in effect at the time of the occurrence which forms the basis of this lawsuit.

**ADMIT OR DENY:**

14. At the time of the occurrence which forms the basis of this lawsuit, Defendant Insurer is unaware of any liability insurance policy which may have been in effect to cover Geneva Murphy to pay for damages which Plaintiff are legally entitled to recover from Geneva Murphy as a result of the collision which forms the basis of this lawsuit.

**ADMIT OR DENY:**

15. At the time of the occurrence which forms the basis of this lawsuit, Defendant Insurer is unaware of any liability bond which may have been in effect to cover Geneva Murphy to pay for damages which Plaintiff are legally entitled to recover from Geneva Murphy as a result of the collision which forms the basis of this lawsuit.

**ADMIT OR DENY:**

16. At the time of the occurrence which forms the basis of this lawsuit, Geneva Murphy is considered an "uninsured motorist" under The Insurance Policy.

**ADMIT OR DENY:**

17. Admit that under the terms of The Insurance Policy, the definition of an "Uninsured motor vehicle" includes a land motor vehicle or trailer of any type to which no bodily injury liability bond or policy applies at the time of the accident.

**ADMIT OR DENY:**



18. At the time of the occurrence which forms the basis of this lawsuit, The Insurance Policy which contained coverage for Uninsured/Underinsured Motorist benefits is policy number 01982 69 82C 7101 1.

**ADMIT OR DENY:**

19. At the time of the occurrence which forms the basis of this lawsuit, Defendant Insurer admits that The Insurance Policy was in force and in effect.

**ADMIT OR DENY:**

20. At the time of the occurrence which forms the basis of this lawsuit, The Insurance Policy had not been cancelled.

**ADMIT OR DENY:**

21. At the time of the occurrence which forms the basis of this lawsuit, Defendant Insurer admits that all applicable premiums for The Insurance Policy had been paid.

**ADMIT OR DENY:**

22. Defendant Insurer admits that Plaintiff gave proper written notice to Defendant Insurer of the Uninsured Motorist claims which form the basis of this lawsuit.

**ADMIT OR DENY:**

23. Defendant Insurer does not contend that Plaintiff failed to give proper written notice of the Uninsured/Underinsured Motorist claims which form the basis of this lawsuit.

**ADMIT OR DENY:**

24. Admit that counsel for Plaintiff gave Defendant Insurer at least 60 days written notice to Defendant Insurer prior to Plaintiff's filing suit in this matter.

**ADMIT OR DENY:**

25. Admit that Geneva Murphy's negligence proximately caused the motor vehicle accident involving which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**



26. Admit that Geneva Murphy's negligence was the sole proximate cause of the motor vehicle accident which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**

27. Admit that Defendant Insurer has no evidence that Plaintiff were negligent and proximately caused the motor vehicle accident which forms the basis of this lawsuit.

**ADMIT OR DENY:**

28. Admit that Defendant Insurer believes the motor vehicle occupied by Plaintiff at the time of the collision which forms the basis of this lawsuit was a total loss.

**ADMIT OR DENY:**

29. Admit that Defendant Insurer believes that Plaintiff was injured as a result of the motor vehicle accident which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**

30. Admit that Defendant Insurer believes it was appropriate for Plaintiff to seek medical care as a result of the motor vehicle accident which forms the basis of this lawsuit.

**ADMIT OR DENY:**

31. Defendant Insurer admits that Plaintiff's health insurance is other insurance of a different kind that may be available to satisfy all or part of the loss they sustained as a result of the motor vehicle accident which forms the basis of this lawsuit as compared to the uninsured/underinsured motorist coverage available to Plaintiff through The Insurance Policy.

**ADMIT OR DENY:**

32. Admit that Defendant Insurer contends that Plaintiff's health insurance is not other insurance of a different kind that may be available to satisfy all or part of the loss they sustained as a result of the motor vehicle accident which forms the basis of this lawsuit as compared to the uninsured/underinsured motorist coverage available to Plaintiff through The Insurance Policy.

**ADMIT OR DENY:**



33. Admit that Defendant Insurer contends that Plaintiff's health insurance is other insurance of same kind that may be available to satisfy all or part of the loss they sustained as a result of the motor vehicle accident which forms the basis of this lawsuit as the uninsured motorist coverage available to Plaintiff through The Insurance Policy.

**ADMIT OR DENY:**

34. Defendant Insurer admits that Plaintiff's uninsured/underinsured motorist claim which form the basis of this lawsuit against Defendant Insurer is a first-party claim.

**ADMIT OR DENY:**

35. Admit that Defendant Insurer is aware that on this uninsured/underinsured motorist claim against Defendant Insurer, it is an "Unfair Settlement Practices" as defined by §541.060(a)(5) of the Texas Insurance Code for Defendant Insurer to refuse, to fail, or to unreasonably delay a settlement offer under applicable first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as may be specifically provided in the policy.

**ADMIT OR DENY:**

36. Admit that The Insurance Policy does not specifically provide that Defendant Insurer may refuse, fail or delay a settlement offer on Plaintiff's uninsured/underinsured motorist claim which forms the basis of this lawsuit because Plaintiff may have other coverage available through their health insurance plan.

**ADMIT OR DENY:**

37. Admit that on this uninsured/underinsured motorist claim against Defendant Insurer which forms the basis of this lawsuit, Defendant Insurer initially refused to extend a settlement offer under applicable first-party coverage on the basis that other coverage, specifically Plaintiff's health insurance coverage, may be available to Plaintiff.

**ADMIT OR DENY:**

38. On the uninsured/underinsured motorist claim by against Defendant Insurer which forms the basis of this lawsuit, Defendant Insurer initially refused to extend a settlement offer under applicable first-party coverage on the basis that other coverage, specifically Plaintiff's health insurance coverage had obtained contractual adjustments with some of Plaintiff's medical providers.

**ADMIT OR DENY:**



39. Admit that Defendant Insurer is aware that on this uninsured/underinsured motorist claim against Defendant Insurer, it is an "Unfair Settlement Practices" as defined by §541.060(a)(8) of the Texas Insurance Code for Defendant Insurer to delay or refuse settlement of a claim solely because there is other insurance of a different kind available to satisfy all or part of the Plaintiff's loss forming the basis of that claim.

**ADMIT OR DENY:**

40. Admit that Defendant Insurer delayed making an offer of settlement on Plaintiff's uninsured/underinsured motorist claim which forms the basis of this lawsuit because there is other insurance of a different kind, specifically Plaintiff's health insurance, available to satisfy all or part of the Plaintiff's loss forming the basis of that claim.

**ADMIT OR DENY:**

41. Admit that Defendant Insurer initially refused making an offer of settlement on Plaintiff's uninsured/underinsured motorist claim which forms the basis of this lawsuit claiming there is other insurance of a different kind, specifically Plaintiff's health insurance, available to satisfy all or part of the Plaintiff's loss forming the basis of that claim.

**ADMIT OR DENY:**

42. Admit that as a result of Defendant Insurer's pleadings seeking to limit Plaintiff's recovery under §41.0105 of the Texas Civil Practice & Remedies Code in this matter, Defendant Insurer is seeking to limit Plaintiff's recovery based upon the existence of other insurance of a different kind.

**ADMIT OR DENY:**

43. Admit that Defendant Insurer has not contributed any sums towards the purchase of Plaintiff's health insurance.

**ADMIT OR DENY:**

44. Admit that Defendant Insurer has not offered to compensate Plaintiff any sums for the premiums Plaintiff have paid to have health insurance benefits in effect at the time of the collision which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**



45.     Admit that Defendant Insurer is refusing to compensate Plaintiff for the full amount of the charges from Plaintiff's medical providers that even Defendant Insurer contends are for the reasonable and necessary medical expenses that are related to the collision which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**

46.     Admit that even on the medical expenses which Defendant Insurer contends are for the reasonable and necessary medical treatment Plaintiff received as a result of the collision which forms the basis of this lawsuit, Defendant Insurer is refusing to compensate Plaintiff for the portion of the medical expenses which Defendant Insurer believes the medical provider has made an adjustment or write-offs as a result of agreements such medical providers may have made with Plaintiff's health insurer.

**ADMIT OR DENY:**

47.     Admit that Defendant Insurer must pay Plaintiff for the reasonable and necessary medical treatment Plaintiff received as a result of the collision which forms the basis of this lawsuit even if Plaintiff's medical provider has made an adjustment or write-off of a portion of such charges as a result of agreements such medical providers may have made with Plaintiff's health insurer.

**ADMIT OR DENY:**

48.     Admit that information regarding the amount of contractual write-offs by Plaintiff's health insurer does not assist Defendant Insurer in determining the amount of Plaintiff's damages which Plaintiff have sustained as a result of the accident which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**

49.     Admit that information regarding the amount of contractual write-offs by Plaintiff's health insurer does not assist Defendant Insurer in determining the amount of Plaintiff's damages which, in reasonable probability, Plaintiff will sustain in the future as a result of the accident which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**

50.     Admit that information regarding the amount of contractual write-offs by Plaintiff's health insurer does not assist Defendant Insurer in determining the negligence of Geneva Murphy in proximately causing the accident which forms the underlying basis of this lawsuit.



**ADMIT OR DENY:**

51.    Admit that information regarding the amount of contractual write-offs by Plaintiff's health insurer does not assist Defendant Insurer in determining the nature or extent of Plaintiff's injuries of the accident which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**

52.    Admit that information regarding the amount of contractual write-offs by Plaintiff's health insurer does not assist Defendant Insurer in determining the reasonableness or necessity of Plaintiff's medical treatment which Plaintiff have incurred or which, in reasonable probability Plaintiff will incur in the future as a result of the accident which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**

53.    Admit that information regarding the amount of contractual write-offs by Plaintiff's health insurer does not assist Defendant Insurer in determining the amount of Plaintiff's lost wage and loss of earning capacity claims as a result of the accident which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**

54.    Admit that information regarding the amount of contractual write-offs by Plaintiff's health insurer does not assist Defendant Insurer in determining the nature and extent of the physical impairment Plaintiff have sustained or that Plaintiff will sustain in the future as a result of the accident which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**

55.    Admit that information regarding the amount of contractual write-offs by Plaintiff's health insurer does not assist Defendant Insurer in determining the nature and extent of the physical pain and suffering or mental anguish Plaintiff have sustained or that Plaintiff will sustain in the future as a result of the accident which forms the underlying basis of this lawsuit.

**ADMIT OR DENY:**

